**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DR. R. CARY CAPPARELLI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: |
| | ) | JURY DEMANDED |
| | ) | |
| OAKTON COMMUNITY COLLEGE, | ) | |
| JOIANNE L. SMITH, ILEO LOTT, | ) | |
| BOARD OF TRUSTEES | ) | |
| | ) | |
| Defendant. | | |

**COMPLAINT**

NOW COMES the Plaintiff, DR. R. CARY CAPPARELLI, by and through his attorneys, for his Verified Complaint against the Defendants, OAKTON COMMUNITY COLLEGE, a public body; JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity, and in support thereof states and alleges as follows:

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) (Title VII), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2.  The employment practices alleged to be unlawful were committed within the state of Illinois and within the jurisdiction of the United States District Court for the Northern District of Illinois.

## PARTIES

3.  Plaintiff, DR. R. CARY CAPPARELLI is a resident of Chicago Illinois.

4.  At all relevant times, Defendant OAKTON COMMUNITY COLLEGE has continuously been doing business in the State of Illinois and has continuously had at least 15 employees.

5.  Oakton Community College is a two-year community college with campuses in Des Plaines and Skokie, Illinois. Oakton employs both full-time and part-time faculty.

6.  At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

7.  JOIANNE L. SMITH, serves as President of the college.

8.   ILEO LOTT currently serves as Provost and Vice President for Academic Affairs at Oakton College.

9.   At all relevant times, Defendant has been a covered entity under Title VII.

## ADMINISTRATIVE PROCEDURES

10. More than thirty days prior to the institution of this lawsuit, Capparelli filed a charge with the EEOC alleging violations of Title VII by Defendant.

11. On September 5, 2024, the EEOC issued to Defendant a Letter of Determination and a right to sue letter. **See Exhibit A.**

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

**STATEMENT OF FACTS**

1. On May 10, 2022, the outgoing and incoming Department Chairs offered the Plaintiff an opportunity to instruct two geography courses for the Fall 2022 term. This offer was later expanded to three courses, with two designated as online and one as face-to-face.

2. The offer was conditional, presented as a "take all or nothing" arrangement, which violated the college's seniority policy allowing instructors to select courses.

3. This policy violation was confirmed by the Provost and Vice President, Ileo Lott.

4. The Plaintiff had expressed interest in teaching online courses only.

5. Throughout the summer of 2022, the Plaintiff repeatedly requested confirmation of the Fall 2022 course assignments, as was standard practice.

6. Despite the Plaintiff's seniority, no response was provided by Defendant.

7. The college left the courses without an assigned instructor until less than two weeks before the term began.

8. Ultimately, the courses initially offered to the Plaintiff were assigned to a less qualified instructor without notice.

9. During the summer of 2022, the Plaintiff failed a student who did not meet course requirements.

10. The aforementioned student did not meet basic academic requirements. The student did not participate in discussion nor did the student ever submit a term paper.

11. This student complained to the Department Chair, who sided with the student in line with the policy of inflating grades.

12. Subsequently, the College Dean Korbel overruled the Plaintiff's decision, issuing the student a passing grade.

13. The Plaintiff objected, as this was a violation of academic integrity, ethical ordinances and law; this was not ethical -- but the plaintiff's objections were ignored.

14. Plaintiff raised this objection to several individuals and committees within the college.

15. Following these events, the Plaintiff continued to seek teaching assignments for the Spring 2023, Summer 2023, and Fall 2023 terms, as had pretextually been recommended by Provost Lott.

16. However, the Plaintiff's requests were ignored, and no response was provided. To this day no response to Plaintiff's request for a teaching assignment has been responded to.

17. In department meetings during the Fall 2021 and Spring 2022 terms, the Plaintiff raised concerns about students enrolling without participating in classes, potentially to secure government grants. These concerns were dismissed.

18. Plaintiff at all times continued to express this concern but it was ignored.

19. During his employment, Plaintiff became aware of and spoke out against the Community College's unlawful practices, which included directives to inflate student grades, pass undeserving students, and encourage enrollment of students who did not participate in classes.

4

20. These actions were designed to misrepresent academic performance and student participation, thereby fraudulently securing state and federal funding for which the College would not otherwise qualify.

21. Plaintiff raised these concerns during faculty meetings, directly challenging the College's actions and refusing to participate in the misconduct. Despite Plaintiff's efforts to expose these practices, the College retaliated against him, punishing him for his whistleblowing rather than investigating Plaintiff's allegations.

22. It was plaintiff's belief that the College's conduct violated multiple federal and state statutes, including:

   A. Illinois False Claims Act (740 ILCS 175/3): The College's actions amounted to a violation of the Illinois False Claims Act, which prohibits: "Any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval... or conspires to defraud the State by getting a false or fraudulent claim allowed or paid." By falsely inflating enrollment figures and misrepresenting academic credits, the College knowingly engaged in fraudulent practices to secure state funding.

   B. Federal False Claims Act (31 U.S.C. § 3729(a)(1)): Similarly, the College violated the Federal False Claims Act, which prohibits: "Any person who... knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval... or conspires to commit a violation of this section." The College's misrepresentation of student participation and academic performance to obtain federal financial aid constitutes a clear violation of this statute.

   C. Higher Education Act (20 U.S.C. § 1094(a)): The College breached its reporting obligations under the Higher Education Act, which requires institutions to: "Submit reports to the Secretary and to eligible lenders containing such information as the Secretary may require." Misreporting enrollment and academic progress directly contravenes this statutory requirement.

   D. Illinois Grant Accountability and Transparency Act (30 ILCS 708/40): The College also violated Illinois law, which mandates: "All recipients of grants under this Act must report quarterly and annually on the use of funds, including compliance with the performance measures identified in the grant agreement." Falsifying these reports to secure grant funding constitutes non-compliance and misuse of public funds.

   E. Code of Ethics for Illinois Educators (23 Ill. Adm. Code 22.20): The College further violated the Code of Ethics for Illinois Educators, which requires educators to: "Teach and evaluate students with honesty and integrity" and "base

all evaluations on students' academic performance and provide accurate records of student progress."

23. By pressuring Plaintiff to alter grades and inflate academic records, the College attempted to coerce him into breaching these ethical and legal obligations.

24. Instead of addressing these violations, the College retaliated against Plaintiff for exposing its unlawful practices. Plaintiff's refusal to engage in fraudulent activity and his vocal opposition to these actions made him a target for the College's retaliatory conduct.

25. Such retaliation, in addition to violating whistleblower protections, further underscores the College's systemic disregard for legal and ethical accountability.

26. Adjunct Faculty Association Head Mary Hope Griffin, who led mandatory seminars, promoted leniency in grading to maintain enrollment numbers, contrary to the university academic philosophy.

27. Adjunct Faculty Association Head Griffin invited the Plaintiff to join the faculty association, but Plaintiff declined due to the aforementioned concerns.

28. The Plaintiff sensed Griffin held him in contempt for refusing to engage in the dishonest grading philosophy.

29. Over time, the Plaintiff experienced what can only be described as a deliberate avoidance of his ethical and legal concerns that he raised on numerous occasions.

30. Plaintiff felt he could no longer even voice his concerns because defendants' strategy appeared to be to simply ignore Plaintiff and refuse to meet with him.

31. After the college transitioned its email system, the Plaintiff's emails regarding course offerings and relevant allegations to this complaint were allegedly "lost".

32. Despite repeated requests, only 24–25 of approximately 250 emails by Plaintiff were eventually recovered. Among the recovered emails was one confirming the "take all or nothing" offer.

33. The Plaintiff continued to request access to the remaining emails, but the college failed to even respond.

34. Provost Lott delayed meetings with the Plaintiff, citing personal reasons, and failed to provide timely responses to inquiries.

35. On the few occasions that Plaintiff was able to obtain a meeting, these were often conducted via Zoom, and technical issues were alleged which further hindered the attempts to communicate.

36. Upon information and belief, the lack of availability was designed as a way for defendant to avoid plaintiff's whistleblowing claims.

37. On September 27, 2023, the Plaintiff attended a Zoom meeting with Provost Lott, Human Resources Director Camesha Richardson, and Dean Mia Hardy to discuss his complaints.

38. The Plaintiff noted that three of the administrators present at the meeting displayed hostile treatment towards him based on him being a white male.

39. Non-white males who made reports and requested investigation were treated fairly.

40. Although the Plaintiff was promised a response within three weeks, the investigation's findings were not delivered until November 20, 2023, nearly nine weeks later.

41. The investigation denied any contractual violations without explanation and concluded the Plaintiff no longer qualified to teach online under "new rules".

7

42. The investigation again did not address Plaintiff's waste and fraud complaints.

43. In order to continue to deprive Plaintiff from an employment opportunity Defendants made up a new requirement that in order to teach online you needed a D2l qualification and professors who had been working there since 2019 were exempt, an arbitrary cutout mark aimed at disqualifying Plaintiff.

44. The Plaintiff challenged the online teaching qualification rules, as they appeared pre-textual, noting his extensive experience teaching on the D2L platform since 2017, while instructors who began using D2L in 2019 were grandfathered in.

45. The Plaintiff later earned the aforementioned advanced online teaching certifications.

46. Plaintiff filed an administrative charge and also sent a letter via mail detailing his whistleblowing allegations to the Illinois Council of Community College Presidents.

47. The college's law firm, Robbins Schwartz, issued a general denial in response to the Plaintiff's Illinois Department of Human Rights complaint on April 12, 2024. This denial contained factual inaccuracies and failed to address the allegations fully.

48. The Plaintiff contends that his race, color, and sex, were integral factors in the investigation's findings or lack thereof an investigation.

49. Plaintiff believes the investigation was compromised by collusion, and retaliation, aimed at silencing him.

### COUNT I FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 FREEDOM OF SPEECH AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, Dr. R. Cary Capparelli, by and through his attorneys, for his Complaint against the Defendants, Oakton Community College; JOIANNE L. SMITH, in her

individual and official capacity; and ILEO LOTT, in his individual and official capacity, for a violation of 42 U.S.C. § 1983 ("§1983"), a violation of Capparelli's First Amendment (as incorporated through the Fourteenth Amendment) Rights of Free Speech, and in support thereof states and alleges as follows:

50. Capparelli re-alleges and incorporates all the above paragraphs as if fully stated herein.

51. Defendants violated Capparelli's free speech rights because they terminated his employment and refused to hire him for future courses in retaliation for refusing orders that he felt were unlawful and unethical and for speaking out including in faculty meetings about the aforementioned illegal fraudulent activities.

52. The termination of Capparelli's employment and refusal to re-hire him amounts to a constitutional deprivation.

53. Capparelli's express pushback and refusal to follow orders he perceived to be unlawful and unethical; as well as being outspoken about the policy being unethical, is akin to speech; and Defendants discharged and refusal to re-hire Capparelli for reasons that infringed upon his constitutionally protected interest in freedom of speech.

54. The speech Capparelli engaged in was constitutionally protected and the Defendants retaliated against him because of that speech. As such, Capparelli can establish that his alleged constitutional deprivations were motivated by his free speech.

55. While Capparelli was a public employee, his speech is constitutionally protected and his interest in expressing himself and commenting on the matters referenced supra was as a private citizen on a matter of public concern outweighs any injury the speech could cause to the college's interest in promoting effective and efficient public service.

56. Capparelli's refusal to follow orders he perceived to be unlawful and unethical, as well as his outspoken remarks, were nondisruptive exercises of his First Amendment right to express himself on matters of public concern.

57. Capparelli's speech was "at least a motivating factor" or a "sufficient condition" of Defendants' decision to terminate him and not hire him for future positions.

58. As such, the protected activity and the adverse action are not wholly unrelated.

59. The temporal proximity of Capparelli's speech and the refusal to continue with his employment cannot be denied.

60. Defendants cannot provide a non-retaliatory reason for the adverse action and the Defendants' proffered reasons are a mere pretext for retaliation.

61. Defendants had no real reason to not extend Capparelli's employment. Capparelli worked for the college for over one year and was meeting all of his employer's reasonable expectations. To be terminated after refusing to follow orders he perceived to be unlawful and unethical, as well as being outspoken against illegal unethical orders, shows there was animosity towards Capparelli.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B. Back pay in an amount to be determined at trial;

C. In the event reinstatement is not granted, front pay;

D. Compensatory and consequential damages, including for emotional distress;

E. Punitive damages;

F. Pre-judgment and post-judgment interest at the highest lawful rate;

G. Attorneys' fees and costs of this action;

H. An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

I. Any such further relief as this Honorable Court finds reasonable.

**COUNT II FOURTEENTH AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983 DENIAL OF PROCEDURAL DUE PROCESS AGAINST ALL DEFENDANTS**

**NOW COMES** the Plaintiff, Dr. R. Cary Capparelli, by and through his attorneys, for his Complaint against the Defendants, Oakton Community College; JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity, for a violation of 42 U.S.C. § 1983 ("§ 1983"), a violation of CAPPARELLI's Fourteenth Amendment Due Process Rights, and in support thereof states and alleges as follows:

62. Capparelli re-alleges and incorporates all the above paragraphs as if fully stated herein.

63. As a public employee, Capparelli was entitled to both a pre-termination hearing prior to his termination, as well as a post-termination hearing after his termination.

64. This pre-termination hearing is an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

65. A public entity prior to the termination must provide oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity for the employee to present his or her side of the story.

66. Capparelli was denied a pre-termination and post-termination hearing and was not given an opportunity to present his side of the story. Capparelli's constitutional injury (refusal to re-new his employment) was caused by JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity, persons with final decision-making authority.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, and that this Court award him the following relief:

11

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;
B. Back pay in an amount to be determined at trial;
C. In the event reinstatement is not granted, front pay;
D. Compensatory and consequential damages, including for emotional distress;
E. Punitive damages;
F. Pre-judgment and post-judgment interest at the highest lawful rate;
G. H. Attorneys' fees and costs of this action;
H. An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;
I. Any such further relief as this Honorable Court finds reasonable. '

**COUNT III VIOLATION OF THE ILLINOIS WHISTLEBLOWER ACT AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, Dr. R. Cary Capparelli, by and through his attorneys, for his Complaint against the Defendants, Oakton Community College; JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity, for a violation of the Illinois Whistleblower Act ("Act"), 740 ILCS 174, et seq., and in support thereof states and alleges as follows:

67. Capparelli re-alleges and incorporates all the above paragraphs as if fully stated herein.

68. Capparelli is an individual who was employed by Defendants relevant hereto; thus is an "employee" under the Whistleblower Act. See 740 ILCS 174/5.

69. The College is an "employer" as defined by the Whistleblower Act. See 740 ILCS 174/5.

70. JOIANNE L. SMITH, and ILEO LOTT, were acting within the scope of their express or implied authority on behalf of the college when committing the acts described herein and are therefore an "employer" as defined by the Whistleblower Act. See 740 ILCS 174/5.

71. An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the

information discloses a violation of a State or federal law, rule, or regulation. See 740 ILCS 174/15.

72. "Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing." See 740 ILCS 174/20.1.

73. On numerous occasions, including during faculty committee meetings, and administration meetings, Capparelli spoke with the Defendants about his aforementioned concerns and whistleblowing -- his concerns remained unanswered. Yet it was evident defendants disliked the allegations being made by Plaintiff as they placed financial funding in jeopardy.

74. Defendants violated the Whistleblower Act by retaliating against Capparelli in numerous ways, including not renewing his contract, textually adding requirements, constructively terminating his employment, refusing to hire him after he spoke out.

75. Capparelli has suffered emotional distress, loss of pay, loss of reputation, and other damages as a result of the Defendants' acts.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;
B. Back pay, with pre-judgment and post-judgment interest at the highest lawful rate;
C. Compensation for any damages sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees.
D. Any such further relief as this Honorable Court finds reasonable.

13

### COUNT IV COMMON LAW RETALIATORY DISCHARGE AGAINST ALL DEFENDANTS

**NOW COMES** the Plaintiff, Dr. R. Cary Capparelli, by and through his attorneys, for his Complaint against the Defendants, Oakton Community College; JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity for Retaliatory Discharge, and in support thereof states and alleges as follows:

76. Capparelli re-alleges and incorporates all the above paragraphs as if fully stated herein.

77. The United States has a clearly mandated public policy in favor of protesting the illegitimate policies and practices of a government agency, as well as public policy in favor of protecting citizen's First Amendment Rights to Freedom of Speech.

78. Illinois has a clearly mandated public policy in favor of protecting whistleblowers.

79. Defendants discharged Capparelli by refusing to extend his teaching role at the college in retaliation for activities in support of the public policies in favor of protesting the illegitimate policies and practices of a government agency, as well as public policy in favor of protecting citizen's First Amendment Rights to Freedom of Speech.

80. Defendants' act of discharging Capparelli in retaliation for Capparelli's actions supra violates clearly mandated public policies of the United States and State of Illinois.

81. Capparelli has suffered a loss of income and significant emotional distress because of Defendants' retaliatory acts.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, OAKTON COMMUNITY COLLEGE and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;
B. Back pay in an amount to be determined at trial;
C. In the event reinstatement is not granted, front pay;
D. Compensatory and consequential damages, including for emotional distress;
E. Punitive damages;
F. Pre-judgment and post-judgment interest at the highest lawful rate;

G. Attorneys' fees and costs of this action;

H. An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

I. Any such further relief as this Honorable Court finds reasonable.

**COUNT V CONSPIRACY UNDER 42 U.S.C. § 1983 AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, Dr. R. Cary Capparelli, by and through his attorneys, for his Complaint against the Defendants, Oakton Community College; JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity, for Civil Conspiracy under 42 U.S.C. § 1983, and in support thereof states and alleges as follows:

82. Capparelli re-alleges and incorporates all the above paragraphs as if fully stated herein.

83. Capparelli was deprived of his constitutional rights when his employment was terminated and not extended in violation of his First Amendment Rights to Freedom of Speech, and in retaliation for speaking out.

84. Defendants made an agreement to deprive Capparelli of his constitutional rights.

85. There was an actual deprivation of Capparelli's rights arising from overt acts in furtherance of the agreement.

86. The college has a well-settled and widespread policy of retaliating against employees for their speech and taking adverse employment action against employees if they posed any kind of perceived comments that would jeopardize the college from securing funding.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, OAKTON COMMUNITY COLLEGE; and that this Court award him the following relief:

a. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

b. Back pay in an amount to be determined at trial;

15

    c.  In the event reinstatement is not granted, front pay;

    d.  Compensatory and consequential damages, including for emotional distress;

    e.  Punitive damages;

    f.  Pre-judgment and post-judgment interest at the highest lawful rate;

    g.  Attorneys' fees and costs of this action;

    h.  An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

    i.  Any such further relief as this Honorable Court finds reasonable.

## COUNT VI COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, Dr. R. Cary Capparelli, by and through his attorneys, for his Complaint against the Defendants, Oakton Community College; JOIANNE L. SMITH, in her individual and official capacity; and ILEO LOTT, in his individual and official capacity, for intentional infliction of emotional distress, and in support thereof states and alleges as follows:

87. Capparelli re-alleges and incorporates all the above paragraphs as if fully stated herein.

88. Defendants' conduct described supra—terminated Capparelli's employment in retaliation. Additionally, Defendants committed these acts while acting in a position of authority to Capparelli, which makes the acts de facto extreme and outrageous. *See McGrath v. Fahey*, 126 Ill. 2d 78, 127 Ill. Dec. 724, 533 N.E.2d 806 (1988).

89. Defendants either intended that their conduct would inflict severe emotional distress or knew that there was at least a high probability that their conduct would cause severe emotional distress when they retaliated against Capparelli.

90. A defendant in a tort case "must take his plaintiff as he finds him, even if he is more susceptible to injury than the average person." *Zurba v. United States*, 247 F. Supp. 2d 951, 962 (N.D. Ill. 2001); *Reed v. Union Pacific Railroad Co.*, 185 F.3d 712, 717 (7th Cir.

1999); *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 45, 680 N.E.2d 407, 416 (1997).

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, OAKTON COMMUNITY COLLEGE; and that this Court award him the following relief:

   a. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;
   b. Back pay in an amount to be determined at trial;
   c. In the event reinstatement is not granted, front pay;
   d. Compensatory and consequential damages, including for emotional distress;
   e. Punitive damages;
   f. Pre-judgment and post-judgment interest at the highest lawful rate;
   g. Attorneys' fees and costs of this action;
   h. An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;
   i. Any such further relief as this Honorable Court finds reasonable.

**COUNT VII: RACE/ COLOR DISCRIMINATION TITLE VII—DISCRIMINATION AND RETALIATION ON THE BASIS OF SKIN COLOR AGAINST OAKTON COMMUNITY COLLEGE**

91. The foregoing paragraphs are re-alleged and incorporated by reference herein.

92. Plaintiff, as a white man, is a member of a protected class. Plaintiff performed his job satisfactorily at all times employed by Defendant.

93. Defendant terminated/ refused to extend Plaintiff's employment in part because of his race and skin color.

94. By the conduct described above, defendant deprived Plaintiff, a white man, of the same rights as are enjoyed by others to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of Title VII.

95. As a result of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

96. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, OAKTON COMMUNITY COLLEGE; and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;

B. Back pay in an amount to be determined at trial;

C. In the event reinstatement is not granted, front pay;

D. Compensatory and consequential damages, including for emotional distress;

E. Punitive damages;

F. Pre-judgment and post-judgment interest at the highest lawful rate;

G. Attorneys' fees and costs of this action;

H. An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;

I. Any such further relief as this Honorable Court finds reasonable.


**COUNT VIII GENDER DISCRIMINATION TITLE VII—DISCRIMINATION AND RETALIATION ON THE BASIS OF GENDER AGAINST OAKTON COMMUNITY COLLEGE**

97. Plaintiff incorporates each of the foregoing allegations of this complaint as if fully set forth herein.

98. At all relevant times, Plaintiff Capparelli was employed by Defendant.

99. Plaintiff was treated less favorably in the terms and conditions of his employment and sustained numerous adverse actions due to his gender, specifically in that he was:

      (a) Subjected to disparate treatment in job assignments compared to his female counterparts, including being denied the same flexibility in schedule such being denied the opportunity to only work remotely.

100.    At all relevant times during his employment, Plaintiff was treated less favorably than his female counterparts seeking and holding employment with Defendant, due to his gender.

101.    As a result of Defendant's discriminatory practices, Plaintiff suffered general damages, including emotional distress, humiliation, and a hostile work environment, all stemming from the gender-based discrimination he endured.

**WHEREFORE**, the Plaintiff, DR. R. CARY CAPPARELLI, requests that judgment be entered against Defendants, OAKTON COMMUNITY COLLEGE; and that this Court award him the following relief:

A. Reinstatement to his previous position, or an equivalent position, with the same seniority status he would have had but for Defendants' actions;
B. Back pay in an amount to be determined at trial;
C. In the event reinstatement is not granted, front pay;
D. Compensatory and consequential damages, including for emotional distress;
E. Punitive damages;
F. Pre-judgment and post-judgment interest at the highest lawful rate;
G. Attorneys' fees and costs of this action;
H. An injunction and order permanently restraining the college and its officers, agents, successors, employees, and/or representatives from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;
I. Any such further relief as this Honorable Court finds reasonable.

### JURY DEMAND

Plaintiff hereby requests a jury trial

DATED:  December 3rd, 2024          Respectfully filed,

By: *<u>Electronic Signature of Frank Avila</u>*
On behalf of the Plaintiff
DR. R. CARY CAPPARELLI

Frank Avila
Attorney and Counselor at Law
Attorney for the <u>Plaintiff</u> DR. R. CARY CAPPARELLI
Illinois ARDC No. 6273730
Cook County ID No. 45783
7132 North Harlem Avenue Suite # 107
Chicago, Illinois 60631
Telephone: 773-671-3480
E-mail: FrankAvilaLaw@Gmail.com

20